## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dean Street Capital Advisors, LLC, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **(JURY TRIAL DEMANDED)** |
| Otoka Energy, LLC; Buena Vista Biomass Development, LLC; Buena Vista Biomass Power, LLC; Amador Biomass, LLC; State Street Bank and Trust Company; and Antrim Corporation, | |
| Defendants. | |

For its Complaint against Otoka Energy, LLC ("Otoka"), Buena Vista Biomass Development, LLC ("BVBD"), Buena Vista Biomass Power ("BVBP"), Amador Biomass, LLC ("Amador"), State Street Bank and Trust Company ("State Street"), and Antrim Corporation ("Antrim"), Plaintiff Dean Street Capital Advisors, LLC ("Plaintiff" or "Dean Street") states and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff Dean Street brings this action to seek payment for services it provided to Defendants. Defendants orally agreed that Plaintiff would be compensated for its services. They acknowledge that Plaintiff has right to payment and that payment is owing to Plaintiff. Although Plaintiff has sought payment, Defendants have failed to pay any amount to Plaintiff. Plaintiff is entitled to be paid for the services it rendered on behalf of Defendants.

## PARTIES

2. Plaintiff is a New York Limited Liability Company with its principal place of business located at 208 Dean Street, Brooklyn, New York 11217. Plaintiff provides consulting services to entities seeking to raise capital and transactions related thereto. Plaintiff's sole member is Noam Berk, who resides at 208 Dean Street, Brooklyn, New York 11217.

3. Defendant Otoka Energy, LLC, is a Delaware Limited Liability Company with its current principal place of business in Sioux Falls, South Dakota, though at all times relevant hereto, Otoka's principal place of business was 8000 Norman Center Drive, #850, Bloomington, Minnesota 55437. Otoka's members are Michael Muston and Rob Broin, both of whom reside in Sioux Falls, South Dakota, but, upon information and belief, at times relevant hereto, resided in Minnesota.

4. Defendant Buena Vista Biomass Development LLC is a Delaware Limited Liability Company with its principal place of business located in Sioux Falls, South Dakota, and a registered agent address in Wilmington, Delaware. BVBD's sole member is Otoka. BVBD is the former owner of BVBP. BVBD is an entity controlled by Defendant Otoka, whose principal place of business was Minnesota at the times relevant to this action.

5. Defendant Buena Vista Biomass Power, LLC, is a California Limited Liability Company with its principal place of business located at 4655 Coal Mine Road, Ione, California 95640, and has a current entity address in Sioux Falls, South Dakota, though at all times relevant hereto, BVBP's registered entity address was 8000 Norman

Center Drive, #850, Bloomington, Minnesota 55437. BVBP is the entity that owns the wood-fired biomass power plant in Ione, California, referenced elsewhere herein, and Amador is currently its sole member. At all times relevant hereto, BVBP was owned by BVBD or Amador, both which were controlled by Otoka, which had its principal place of business in Minnesota at all times relevant hereto.

6. Defendant Amador Biomass, LLC, is a Delaware Limited Liability Company with a principal place of business located in Sioux Falls, South Dakota. Amador's sole members are Otoka and Antrim Corporation, which has its principal place of business at One Lincoln Street, Boston, Massachusetts 02111. Amador is an entity controlled by Defendant Otoka, which had its principal place of business in Minnesota at all times relevant hereto. Otoka is Amador's manager.

7. Defendant State Street Bank and Trust Company is a Massachusetts company with its registered office address at One Lincoln Street, Boston, Massachusetts 02111. State Street has extensive experience with tax equity financial transactions in the context of renewable energy facilities and sophisticated tax subsidy structures. State Street structured the tax equity transaction and side agreement, referenced elsewhere herein, which caused injury in Minnesota. State Street representatives communicated and negotiated with Minnesota residents and at times traveled to Minnesota to consummate this deal.

8. Defendant Antrim Corporation is a Massachusetts Company with its registered office address at One Lincoln Street, Boston, Massachusetts 02111. It is a wholly-owned subsidiary of State Street and, upon information and belief, the entity was

created for the purpose of assisting with the tax equity transaction which forms the basis of this case. Antrim was a party to the tax equity transaction, had numerous contacts with Minnesota related to this lawsuit, and its actions caused injury in Minnesota. Antrim representatives communicated and negotiated with Minnesota residents and at times traveled to Minnesota to consummate this deal.

## **JURISDICTION, VENUE, AND JURY TRIAL**

9. This Court has personal jurisdiction over all Defendants because they either regularly transact business within the State of Minnesota, or they have had a significant quantity of contacts with this State directly related to the claims at issue such that personal jurisdiction would not offend traditional notions of fair play and substantial justice.

10. Specifically, this Court has personal jurisdiction over Otoka, BVBD, BVBP, and Amador because, at all times relevant to this controversy, they had their principal place of business, or nerve centers, in Minnesota, transacted business in Minnesota, entered into contracts in Minnesota governed by Minnesota law, and their contacts with Minnesota are directly related to the harm suffered by Dean Street.

11. This Court has personal jurisdiction over State Street and Antrim because they transacted business in Minnesota (State Street structured a tax equity transaction affecting Minnesota residents, and Antrim was a contracting party to the transaction with Minnesota residents), each had a significant quantity of contacts with the State of Minnesota directly related to the claims at issue including, but not limited to, entering into agreements with Minnesota parties, and sending correspondence, agreements, and dozens (if not hundreds) of emails to parties and legal counsel in Minnesota, such that exercising

4

personal jurisdiction would not offend traditional notions of fair play and substantial justice. State Street and Antrim have also been subject to suit in Minnesota in the past relating to the same transaction and occurrence without raising lack of personal jurisdiction as a defense.

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because this is a civil action involving an amount in controversy exceeding $75,000, exclusive of interest and costs, and is between parties of diverse citizenship.

13. Venue is proper in Minnesota as the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

14. Plaintiff hereby demands a jury trial on any cause of action and claim with respect to which there is a right to a jury trial.

## **FACTS COMMON TO ALL CAUSES OF ACTION**

15. Prior to 2008, Defendant BVBD began to develop a wood-fired biomass power plant in Ione, California (the "Plant").

16. In early 2012, Plaintiff began providing services to Defendant BVBD in connection with the potential purchase and sale of the Plant from Defendant BVBD to Defendant Amador, and a tax equity transaction among the Defendants Otoka, Amador and Antrim that closed on or about June 28, 2012.

17. As a part of the transaction, each Defendant orally agreed and promised to Plaintiff that Plaintiff was to be paid for services rendered in conjunction with the purchase and sale of the Plant and the tax equity transaction.

18. The terms of contemporaneous contracts between and among Defendants reflected Defendants' understanding that Plaintiff would be paid for services rendered.

19. Other written documents likewise confirm that Dean Street was to be paid for its services. For example, in connection with the broader transaction, the parties created a "flow of funds" memorandum showing the anticipated flow of funds in the transaction. Dean Street was included in the flow of funds memorandum. None of the Defendants objected to the payment being included in the flow of funds memorandum.

20. After the transaction closed, Dean Street sent invoices and made specific demands for payment but was never paid.

21. Following the consummation of the transaction, all obligations of Defendant BVBD, as the sole owner of BVBP prior to the closing of a Purchase and Sale Agreement, were assumed and guaranteed in writing by Defendant Amador, and the obligations of Defendant BVBD to Plaintiff were also assumed and guaranteed in writing by Defendant Otoka.

22. Following the consummation of the transaction, all obligations of BVBD to Plaintiff were assumed and guaranteed in writing by Defendant Amador, and the obligations of Defendant Amador were also assumed and guaranteed in writing by Defendant BVBD.

23. In November of 2012, State Street drafted a side agreement with Otoka whereby Otoka would lend Amador $10 million rather than State Street putting in equity of $10 million as contemplated by the tax equity transaction documents. As part of this side agreement, the use of the proceeds of the debt infusion by Otoka into Amador must be

expressly approved by State Street/Antrim, meaning that State Street and Antrim needed to approve any payment to Dean Street from the $10 million in funds coming into Amador from Otoka.

24. The loan made by Otoka to Amador was supposed to be used to help clear outstanding accounts payable. The amount owed to Dean Street was an account payable at the time the loan was made, but Defendants decided not to pay Dean Street the money due and owing. Following the November side agreement, State Street and Otoka were both involved in deciding what entities would be paid, and which ones (like Dean Street) would not.

25. At the time the side agreement was entered into, State Street expressly acknowledged Dean Street was presently included on the payables report (because Dean Street's right to payment had been cemented at closing). State Street was responsible for removing Dean Street from the current payables, meaning that Dean Street would no longer be paid pursuant to Exhibit A to the side agreement.

26. State Street (and its wholly-owned subsidiary, Antrim), at all times relevant hereto, knew that Dean Street had provided valuable services that allowed the tax-equity transaction to become a reality (and in fact requested that Dean Street perform certain services), knew that Dean Street was entitled to be paid for its services, and acknowledged that a debt was owed to Dean Street by Defendants. State Street and Antrim restructured the original tax-equity transaction through the side agreement, giving themselves the power to control who was paid from the $10 million loan made by Otoka to Amador. State Street and Antrim then caused Dean Street not to be paid.

27. Dean Street not being paid benefitted all Defendants. By not paying Dean Street, Amador (and its owners, State Street (through Antrim) and Otoka) remained richer at Dean Street's expense. Defendants were able to retain the benefit of Dean Street's services without paying for them.

28. At bottom, all Defendants knew and understood that Dean Street was to be paid for its services when the tax equity transactions closed, but Plaintiff was not paid any of the agreed-upon fee for services rendered in connection with said transactions.

29. Despite a series of discussions between the parties and a series of demand letters, no payment whatsoever has been made.

## COUNT I
## BREACH OF CONTRACT
**(All Defendants)**

30. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

31. Plaintiff and Defendants entered into an oral contract whereby each Defendant agreed and promised to compensate Plaintiff for services rendered in conjunction with the purchase and sale of the Plant and the tax equity transaction, and Plaintiff agreed and promised to perform those services.

32. Plaintiff fully performed its obligations, including any applicable condition precedent, by, among other things, introducing State Street Bank and Trust (the parent company of Antrim Corporation) to Defendants in January 2012, assisting in developing financial models used to evaluate the Transaction, and providing other consulting services concerning the Transaction.

33. Plaintiff provided these services based on Defendants' agreement to compensate Plaintiff for its work.

34. Defendants breached by refusing to pay any part of the fees owed to Plaintiff.

35. As a result of Defendants' breach, Plaintiff has been damaged and is entitled to damages in an amount exceeding $75,000, together with costs, disbursements and interest as allowed by law.

## COUNT II
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
**(All Defendants)**

36. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

37. Based on the contract identified above, Defendants are subject to a covenant of good faith and fair dealing to Plaintiff.

38. By the above-described conduct, Defendants have breached the covenant of good faith and fair dealing. This conduct evaded the spirit of the parties' contract and breached duties fairly inferable from the express terms of said contract. This conduct includes, but is not limited to, wrongfully attempting to restructure the deal to avoid paying Plaintiff for its services and failing to make good on Defendants' obligations to Plaintiff.

39. In breaching the covenant of good faith and fair dealing, Defendants acted in bad faith and with an ulterior motive.

40. As a result of Defendants' breach, Plaintiff has been damaged and is entitled to damages in an amount exceeding $75,000, together with costs, disbursements and interest as allowed by law.

## COUNT III
## QUANTUM MERUIT (CONTRACT IMPLIED IN FACT)
**(All Defendants)**

41. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

42. Plaintiff performed services at the request of Defendants in good faith, spending significant time and effort, and performing valuable services for Defendants.

43. Defendants accepted and benefited from the services performed by Plaintiff.

44. Plaintiff performed services for Defendants with the reasonable and express expectation of receiving compensation therefor, which expectation Defendants violated.

45. Plaintiff is entitled, based on the equitable doctrine of *quantum meruit*, to the reasonable value of said services.

## COUNT IV
## UNJUST ENRICHMENT (CONTRACT IMPLIED IN LAW)
**(All Defendants)**

46. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

47. Defendants obtained the benefit of Plaintiff's services in conjunction with the sale of the power plant and the tax equity transaction.

48. Defendants knowingly appreciated, accepted and retained the benefit of Plaintiff's services without paying for them, and despite having no right, title, or interest in same.

49. Under these circumstances, it would be inequitable for Defendants to retain the value of Plaintiff's services without paying for them.

50. As a result of the above-referenced unjust enrichment, Defendants have been enriched, and Plaintiff has suffered a detriment, in an amount in excess of $75,000.00.

**COUNT V**
**PROMISSORY ESTOPPEL**
**(All Defendants)**

51. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

52. Defendants promised to pay Dean Street for its services in conjunction with the sale of the power plant and the tax equity transaction.

53. Defendants' promise was intended to induce reliance by Plaintiff.

54. Dean Street relied on that promise when it decided to provide its services in conjunction with the sale of the power plant and the tax equity transaction.

55. Defendants failed to make the promised payments, which caused harm to Dean Street because it was not paid for its services, and enforcement of the promise of payment is necessary to prevent injustice.

56. As a result of the Defendants' failure to follow through on their promise, Plaintiff has been damaged in an amount in excess of $75,000.00.

**COUNT VI**
**ACCOUNT STATED**
**(All Defendants)**

57. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

58. Plaintiff and Defendants entered into a contract whereby Defendants were bound to reimburse Plaintiff for services rendered to and for their benefit.

59. Plaintiff provided Defendants with invoices containing descriptions of services rendered to and for their benefit.

60. Defendants currently owe Plaintiff for invoiced services rendered, and Defendants have acknowledged as much.

61. Defendants have failed to pay Plaintiff despite their promise to do so.

62. Plaintiff is entitled to recover from Defendants on the account stated for services rendered in excess of $75,000, together with costs, disbursements and interest as allowed by law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Dean Street Capital Advisors, LLC demands judgment against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $75,000, plus costs, fees, disbursements and interest as allowed by law in connection with this action; and such other and further relief as the Court may deem appropriate.

Dated: May 26, 2017　　　　　　　　**ANTHONY OSTLUND BAER & LOUWAGIE P.A.**

By: s/ Arthur G. Boylan
　　Arthur G. Boylan (#338229)
　　aboylan@anthonyostlund.com
　　Steven C. Kerbaugh (#0390429)
　　skerbaugh@anthonyostlund.com
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 349-6969
Facsimile: (612) 349-6996

**ATTORNEYS FOR PLAINTIFF**